RECEIVED
USDC. CLERK, CHARLESTON, S

2009 JAN -6  A 10: 37

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Timothy Williams, ) | C. A. No. 2:07-3679-MBS-RSC |
| Plaintiff, ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| Force Protection ) Industries, Inc., et al. ) | |
| Defendant. ) | |

This employment discrimination case brought by an individual proceeding pro se alleging violations of Title VII, 42 U.S.C. § 2000e et seq. (Title VII), with three appended state law causes of action is before the undersigned United States Magistrate Judge for a Report and Recommendation on the parties' cross motions for summary judgment. 28 U.S.C. § 636(b).

On December 5, 2007, Plaintiff Timothy Williams, a white male, filed the instant action against his former employer, Force Protection Industries, Inc., and its employees Howard Eisenhut, Sheila Boyd, Vanessa Ladson, Helen Gearheard, and Brenda Valentine. Plaintiff alleged that he was subjected to illegal reverse race discrimination when on March 5, 2007, Force Protection rescinded a written offer of employment to him based on his white race. The plaintiff also brought state law claims of breach of contract, libel, and slander.

1

The defendant filed its motion for summary judgment on June 10, 2008. On June 12, 2008, Plaintiff was provided a copy of the motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The plaintiff filed his motion for summary judgment on June 16, 2008, which the defendants opposed. The plaintiff also filed a "response and opposition to" the defendant's motion for summary judgment on July 3, 2008. Replies and sur replies have been filed. Hence it appears that consideration of the motions is appropriate.

## **ASSERTED GROUNDS FOR SUMMARY JUDGMENT**

Defendant contends that it is entitled to judgment as a matter of law for the following reasons:

> 1) Williams has not alleged or produced any direct evidence of discriminatory intent on the part of Defendant Force Protection Industries. (Def.'s Mot. at 13).
>
> 2) Williams is a white male and was selected and hired by Defendant Eisenhut, who is also a white male of similar age. (Def.'s Mot at 14).
>
> 3) A litany of legitimate non-discriminatory reasons for rescinding the offer of employment, including: (a) concern that Williams was not truthful with the information he provided in his resume and employment application; (b) Williams' poor interactions with individuals within the company; (c) Williams' failure to follow company policy and procedures; (d) Williams' providing unsolicited reports; (e) Williams' seeking to hire

individuals he was not authorized to hire. (Def.'s Mot. at 15-16).

4) The terms of the Williams' contract provided for employment-at-will.

5) Force Protection's employees statements are absolutely privileged communications, and, in the alternative, are subject to qualified privilege.

Plaintiff contends that he is entitled to judgment as a matter of law for the following reasons:

1) Force Protection Industries breached its contract with the Plaintiff when it rescinded its offer of employment without just cause. Plaintiff reasonably relied on the promise of employment and thus the doctrine of promissory estoppel is applicable. (Pl.'s Mot. at 21). Plaintiff was enticed to close his company as a result of the employment offer. (Pl.'s Mot. at 22).

2) Each of the four individual defendants knowingly and with malice presented false information and facts in their affidavits to the court. (Pl.'s Mot. at 23).

3) Force Protection Industries subjected the Plaintiff to reverse discrimination as evidenced by background circumstances indicating "something 'fishy' about the facts at hand." (Pl.'s Mot. at 70).

4) Plaintiff was meeting his employer's legitimate business expectations at the time as manifested by a letter from John Wall, Vice President for Legal Affairs, Force Protection Industries. (Pl.'s Mot. at 70).

5) Plaintiff was replaced by someone outside the protected class, Thomas Hall, an African-American. (Pl.'s Mot. at 71).

**SUMMARY JUDGMENT STANDARD**

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel

Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

## FACTS

The motions will be considered seriatim.

Defendant's motion was the first in time. The relevant facts taken in a light most favorable to the plaintiff, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

In April of 2006, Plaintiff Timothy Williams applied for employment with Force Protection Industries and submitted a resume. (Williams depo., p. 13-14; p. 29-30). In this first resume, Williams represented that he held a Master's Degree in Business Administration/Public Administration from Earlcroft University, London, England. (Def. Exhibit #6). Williams was not hired. (Williams depo. p. 14-15). However, on November 15, 2006, Force Protection and Williams entered into a written agreement through which Williams was to provide consulting services for the defendant company as an independent contractor through February 17, 2007. (Williams depo. p. 12-13; Def. Exhibit #1).

In mid-December 2006 Howard Eisenhut, a white male who was Williams' supervisor, asked Williams to draft a job description for the position of Security Director. Eisenhut also asked Williams if he was interested in the position, told him the job was his if he wanted it, and asked how soon Williams could begin work. Williams told Eisenhut that he could begin work January 2, 2007. However, a few days later, Eisenhut told Williams that the job opening had to be posted and that the position was going to be Security Manager, rather than Security Director. Eisenhut told Williams that this was just a formality and the position was still his. (Williams depo. p. 17-18).

On December 21, 2006, Williams submitted a second resume and employment application seeking employment with Force Protection as Security Manager. In this resume Williams represented that he held a Master of Arts in Public Administration.[1] He did not indicate that he had a MBA as represented in his prior resume. (Def.'s Exhibit #7). Williams was interviewed by Eisenhut, Don Proctor, and Alan Jackson, was recommended by Eisenhut and Vaughn Williams, and was offered the job in a letter signed by Chief Operating Officer Raymond Pollard on February 12, 2007. (Pl.'s Exhibit F).

---

[1] The resume did not list which school the degree was from. (Def.'s Exhibit #7). In his deposition, Williams stated that he performed 28 hours of graduate work at the University of Oklahoma, but failed to complete the last two hours required to obtain a master's degree. (Williams depo. p. 24)

6

Williams accepted the offer on February 15, 2007. (Pl.'s Exhibit E). According to the offer Williams was to start work by March 5, 2007. (Def.'s Exhibit #2). The offer further states: "Our offer and your start date are predicated upon the results of a post-offer substance abuse screening test, background investigation, and the presentation of proper documents verifying your authorization to work in the United States." (Def.'s Exhibit #2). Additionally the offer indicates, "South Carolina is an 'Employment-at-will' state, and the agreement between us is intended to be 'at will'." (Def.'s Exhibit #2).

In early January 2007 Pollard requested that Williams draft recommendations concerning the protection of the corporation's chief scientists and executives. Williams presented the report to Pollard. In February 2007 Pollard asked Williams to arrange to have security systems installed in several executives' residences and provided him with a list of the executives. Williams took his list of executives to the office of the Payroll Administrator, defendant Brenda Valentine. Williams handed her his business card, explained the task and asked if he could have her assistance in obtaining the executives' current addresses. Williams contends that Valentine was cooperative and pleasant.

However, Valentine contends that Williams' demeanor was "authoritative and rude". (Def.'s Exhibit #3 Valentine aff.). She affied that she did not know who he was and that the

information was considered confidential. As a result, she refused to give the addresses to him and he then became "irate". Id. Valentine reported the encounter with Williams to Eisenhut and Human Resources Director Sheila Boyd.

Williams also had an encounter with defendant Ladson who is employed as a Senior Accounts Payable Administrator at Force Protection. Ladson contends Williams did not follow appropriate company procedures for securing funds for the purchase of assets. (Def.'s Exhibit #4; Ladson depo. p. 39-40) Eisenhut also maintains that Williams drafted job descriptions for security personnel positions with Force Protection when he was not asked to do so and sought to hire individuals whom he was not asked to hire. (Eisenhut depo. p.63-69).

Force Protection hired Verifications, Inc. (Verifications) to conduct a background investigation on Williams. The investigation summary indicated a "Concern/Discrepancy" regarding Williams' assertion that he attended Earlcroft University and that Williams' attendance could not be verified. (Def.'s Exhibit #5; Boyd depo. p.77-78). The Verifications' report states, "We researched our college/university references and were unable to find an accredited institution with the name provided by your applicant. We have also discovered they offer graduation documents for sale on the Internet with no course completion requirements." Verifications was also unable to verify Williams'

employment history. (Def.'s Exhibit #5). Force Protection asserts the conflicting educational background information provided by Williams was a concern to the Human Resources department at Force Protection. (Boyd depo. p. 80-81). Williams deposed that he was awarded an MBA from Earlcroft University in London, England, but he never received any written verification of the degree, never attended classes at Earlcroft, and Earlcroft never actually sent him a diploma. (Williams depo. p. 23-25).

On March 5, 2007, Williams received a call from Boyd and Eisenhut informing him that his offer of employment was rescinded. (Williams depo. p. 26). Williams maintains that when he asked for a reason, they said they reevaluated the offer. Eisenhut said that the company wanted to continue their association with Williams as a consultant.

Eisenhut maintains his decision to rescind Williams' job offer was made for numerous business reasons, including Williams' poor interaction with co-employees Valentine and Ladson, his failure to follow company policy or procedures, his making unsolicited reports, his seeking to hire individuals he was not authorized to hire, and Eisenhut's concern with question raised by Williams' background check. (Eisenhut depo. p.33, 58, 69-70).

On March 30, 2007, Williams noticed the position for Security Director was posted, and he applied for the position. In this third application, he made no reference to having an MBA

degree or a Master of Arts degree as indicated in the prior two resumes. (Def.'s Exhibit #8). On April 1, 2007, the position was no longer posted on the website. On April 3, 2007, Williams was notified the position had been filled.[2] Williams alleges Vice President Wayne Phillips told him that Sheila Boyd was "pushing to hire a black male" for the position of security manager.

Williams filed a complaint with Force Protection after speaking with an EEOC representative. On April 17, 2007, Williams met with COO Pollard who said Williams' offer of employment was rescinded because Williams had made improper demands of other employees during his first day at work. Williams then submitted a complaint to the South Carolina Human Affairs Commission. (Def.'s Exhibit O). The South Carolina Human Affairs Commission issued a dismissal and a notice of right to sue on September 10, 2007. (Def.'s Exhibit P). This action followed timely.

### RACE DISCRIMINATION IN EMPLOYMENT LAW

Title VII provides that "[i]t shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

---

[2] Thomas Hall was interviewed for the position of Security Manager on February 8, 2007, but was not selected. He was subsequently offered the position of Security Director which he accepted on April 3, 2007. (Aff. Of Shelia Boyd).

10

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ..." Green v. Clarendon County School Dis. Three, 923 F.Supp. 829, 840 (D.S.C. 1996)(citing Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e-2(a) (1994)).  Furthermore, "an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

Absent direct evidence of discrimination, the plaintiff in a Title VII case must carry the initial burden of establishing a prima facie case of racial discrimination.  McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). In order to establish a prima facie case of discrimination, Plaintiff must show the following:  1) that he is a member of a protected class; 2) that he applied for the position in question; 3) that he was qualified for the position; and 4) that he was rejected for the position in favor of someone from outside of his protected class, or there is some other evidence giving rise to an inference of unlawful discrimination.  Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995), citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); see also, Alvarado v. Bd. of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991).

While Title VII applies on the same terms to discrimination against males or whites, Hicks v. ABT Assocs., 572 F.2d 960 (3rd Cir. 1978), where a plaintiff in an employment discrimination case alleges a case of "reverse discrimination," the prima facie requirements are more onerous. Rather than showing that the plaintiff is a member of a protected class, the plaintiff must establish background circumstances which support the suspicion that the defendant is among those unusual employers who discriminate against the majority. Tatum v. Philip Morris, Inc., 809 F.Supp. 1452 (W.D.Okla. 1992), aff'd, 16 F.3d 417 (10th Cir. 1993), cert. denied, 511 U.S. 1083, 114 S.Ct. 1833 (1994); Martin-Trigona v. Board of Trustees, 668 F.Supp. 682 (D.D.C. 1987); see, Murray v. Thistledown Racing Club, Inc., 770 F.2d 63 (6th Cir. 1985).

Once the plaintiff meets the initial burden, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. Thereafter the complaining party must demonstrate that race was a motivating factor for the employment practice.

The purpose behind the passage of Title VII is "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority

citizens." McDonnell Douglas, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823.

## DISCUSSION

A review of the record and relevant case law indicates that the defendant's motion for summary judgment should be granted on the Title VII employment cause of action and that the court should decline to exercise jurisdiction over the state law causes of action.

First, but for the race of a subsequent sole applicant, and a random hearsay statement, there is no mention of race or indication that race played a part in the decision not to hire the plaintiff.

There is no indication that Force Protection is the unusual employer who discriminates against the majority. Eisenhut, like Williams, is a white male. He recommended that Williams be selected for the position of Security Manager. He also made the decision to rescind Williams' offer of employment. (Def.'s Mot. At 16). "When the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer." Proud v. Stone, 945 F.2d 796, 799 (4th Cir. 1991).

Moreover, when the employee was hired and fired by the same person within a relatively short time span, a strong inference exists that the employer's stated reason for acting against the

employee is not pretextual. Id. at 798 (six months from hiring to firing infers no discrimination). The offer of employment was dated February 12, 2007, at which time Eisenhut knew Williams was white. Eisenhut rescinded the offer on March 5, 2007. Thus, the offer and the rescission both occurred during a one month time span whereas the hiring and firing in Proud was over a six month time span. Id.

The Proud court noted, "One is quickly drawn to the realization that '[c]laims that employer animus exists in termination but not in hiring seem irrational.' From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" citing Donohue & Siegelman, The Changing Nature of Employment Discrimination Litigation, 43 Stan.L.Rev. 983, 1017 (1991). Instead a strong presumption exists that the reasons for rescinding the offer of employment were not mere pretext for race discrimination. Further, the early resolution of the question of discrimination vel nom "need not be derailed by strict fealty to proof schemes." Proud at 798.

Williams relies on his allegation that Vice President Wayne Phillips told him that Sheila Boyd was "pushing to hire a black male" for the position of security manager. However, this

statement is inadmissible hearsay made by a person detached from the hiring and firing process. Thus, all credible evidence goes toward a finding that Force Protection is not the unusual employer who discriminates against the majority.

Second, there is no showing the plaintiff was qualified for the position. His educational and employment background is suspect; his interpersonal skills appear to be wanting, and his demonstrated inability to follow policy and procedures all reveal him unqualified for a managerial position. From April 2006 to March 2007, Williams submitted three resumes to Force Protection. In his first resume, Williams indicated he held a Master's degree in Business Administration/Public Administration from Earlcroft University, London, England. (Def. Exhibit #6). In his second resume, Williams indicated he held a Master of Arts in Public Administration and made no mention of having a Master's degree in Business Administration/Public Administration. (Def. Exhibit #7). In his third resume, Williams made no reference to having a Master's degree in Business Administration/Public Administration or a Masters of Arts degree as previously indicated in the prior two resumes. (Def. Exhibit #8) It is manifest that these discrepancies would concern management and the Human Resources department at Force Protection. Williams admits to never attending classes at Earlcroft University and never receiving a diploma. (Williams depo. p. 23). Verifications' background

investigation revealed the online university, Earlcroft, as "offering graduation documents for sale on the Internet with no course completion requirements". Moreover, Williams admits he does not have a Masters of Arts degree in Public Administration. (Williams depo. p.22). The misrepresentations in Williams' resumes go toward a finding that he is unqualified for the security position. Moreover, Williams' interactions with defendants Valentine and Ladson highlight his inability to interact well with other members of the company. It is also clear that Williams is unable to follow company practice and procedure, evidenced by his actions in drafting job descriptions for security personnel positions when he was not asked to do so and seeking to hire individuals he was not asked to hire. Thus, Williams has failed to demonstrate he was qualified for the position of Security Manager.

The defendant's racially neutral reasons for its actions are undisputed and there is no evidence they are pretextual.

Accordingly, the defendant is entitled to summary judgment on the plaintiff's claims of reverse discrimination.

## **BREACH OF CONTRACT, LIBEL, AND SLANDER**

Lastly, if the court accepts this report and recommendation the federal causes of action will drop from the case and only the state law causes of action for breach of contract, libel, and slander will remain. Because it appears that the federal claim

should be dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining appended state law claims against Force Protection Industries and the individual defendants. See, 28 U.S.C. § 67(c)(3).

### CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that Defendant Force Protection Industries, Inc.'s motion for summary judgment on the federal employment discrimination cause of action be granted, that all other motions be denied as moot, and that the court exercise its discretion to decline jurisdiction over the state law causes of action, and that this matter be ended.

Respectfully Submitted,

*/s/ Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

January __6__, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

**Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e).** Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).