**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Timothy Williams, ) | Civil Action No. 2:07-cv-3679-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Force Protection Industries, ) | |
| Inc., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Timothy Williams ("Plaintiff") filed this action *pro se* against his former employer, Force Protection Industries ("FPI"), and its employees, Howard Eisenhut, Sheila Boyd, Vanessa Ladson, Helen Gearheard, and Brenda Valentine (collectively "Defendants"), on December 5, 2007. Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. Plaintiff also asserts state law claims for breach of contract, libel, and slander. On June 10, 2008, Defendants filed a motion for summary judgment. *See* Fed. R. Civ. P. 56. On June 12, 2008, Plaintiff was mailed a copy of the motion and was given an explanation of the dismissal and summary judgment procedures, as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure. *See Roseboro v. Garrison*, 524 F.2d 309 (4th Cir. 1975). On June 16, 2008, Plaintiff filed a motion for summary judgment. Defendants filed a response in opposition to Plaintiff's motion for summary judgment on June 23, 2008. On July 3, 2008, Plaintiff filed both a reply to Defendants' response in opposition to his summary judgment, as well as a response in opposition to Defendants' motion for summary judgment. Defendants filed a surreply

to Plaintiff's reply on July 14, 2008. Plaintiff filed a surreply to Defendants' surreply on July 22, 2008.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Robert S. Carr for a Report and Recommendation. The Magistrate Judge filed a Report and Recommendation on January 6, 2009. The Magistrate Judge determined, among other things, that (1) Plaintiff did not make out a prima facie case of race discrimination under Title VII; and (2) FPI's race-neutral reasons for its actions were undisputed and there was no evidence the reasons were pretextual. Accordingly, the Magistrate Judge recommended that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied as moot. The Magistrate Judge further recommended that if the Report and Recommendation is accepted, this court should decline to exercise jurisdiction over the remaining appended state law claims in the interests of judicial economy, convenience, fairness, and comity. On January 20, 2009, Plaintiff filed objections to the Magistrate Judge's Report. Defendants also filed objections to the Magistrate Judge's Report on January 26, 2009. Defendants filed a reply to Plaintiff's objections on February 2, 2009, and on February 5, 2009, Plaintiff responded to Defendants' reply. Finally, Plaintiff filed a reply to Defendants' response to Plaintiff's objections on February 18, 2009.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by

the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

All relevant facts will be taken in a light most favorable to Plaintiff and all reasonable inferences will be drawn in favor of Plaintiff.

Plaintiff, who is a white male, applied for employment with FPI in April 2006. (Williams Depo., at 13). The resume submitted by Plaintiff represented that he holds a Master of Business Administration/Public Administration. (Pl.'s Objections, at 15). Plaintiff was interviewed for a position, but was not hired. (Williams Depo., at 15). Some time after the interview, FPI contacted Plaintiff about performing security consulting services as an independent contractor. (Williams Depo., at 15). The parties executed a contract and Plaintiff worked as an independent contractor pursuant to that contract from November 17, 2006 to February 17, 2007. (Williams Depo., at 13, 16). Plaintiff also continued to provide services after the term of the contract expired. (Williams Depo., at 16).

On December 21, 2006, at the request of Defendant Howard Eisenhut, a white male, Plaintiff applied for the position of Security Manager with FPI. (Williams Depo., at 16). Plaintiff submitted a second employment application with a new resume. (Williams Depo., at 16-17). Plaintiff contends this was a formality and Plaintiff had already been told the job was his. (Williams Depo., at 17). The second resume indicated that Plaintiff held a Masters of Arts in Public Administration. (Pl.'s Objections, at 15). Plaintiff was again interviewed for a position. (Williams Depo., at 18). Following the interview, Mr. Eisenhut decided to offer Plaintiff the position of Security Manager. Plaintiff received a written employment offer on February 12, 2007. (Williams Depo., at 19).

Plaintiff accepted the employment offer on February 15, 2007. Plaintiff was to begin work at his new position of Security Manager on March 5, 2007. (Williams Depo., at 20).

Shortly after Plaintiff accepted the employment offer, Plaintiff went to Defendant Brenda Valentine's office and requested certain information from her. Ms. Valentine expressed reluctance about giving the information to Plaintiff. Plaintiff made certain statements to Ms. Valentine, and she immediately reported the disagreement to Defendant Shelia Boyd, who works in the employee relations area of FPI's Human Resources Department. Ms. Boyd reported the disagreement to Mr. Eisenhut, and characterized Plaintiff's behavior toward Ms. Valentine as " very rude" and "another issue." (Eisenhut Depo., at 18). Mr. Eisenhut immediately spoke to Ms. Valentine regarding Ms. Boyd's account of the disagreement. Mr. Eisenhut stated that Ms. Valentine was "very, very upset" by what happened and she stated that Ms. Ladson had a similar issue with Plaintiff. (Eisenhut Depo., at 19). Ms. Ladson verified to Mr. Eisenhut that she had the "same type of run in" with Plaintiff over Plaintiff's desire to obtain FPI funds to purchase equipment without following normal procedures. (Eisenhut Depo., at 19) (Ladson Depo., at 39). Another employee, Helen Gearheard, apparently overheard Ms. Ladson's statement and stated that Plaintiff was being very aggressive toward people. (Eisenhut Depo., at 19). Mr. Eisenhut became concerned about the speed at which he was receiving complaints about Plaintiff and that Plaintiff's actions were scaring other employees. (Eisenhut Depo., at 23).

On March 2, 2007, Plaintiff's start date was pushed back to March 12, 2007, because the investigation into his background was not complete. (Williams Depo., at 20). The background investigation was not complete because of concerns and discrepancies about Plaintiff's educational credentials. (Boyd Depo., at 78-79). Plaintiff in fact does not have a Master of Arts degree in Public

Administration. (Williams Depo., at 22). Plaintiff does have an MBA from Earlscroft University, but Plaintiff never attended classes to obtain the degree. (Williams Depo., at 23). The concern at FPI was that Earlscroft University was an online "degree mill" that accepted payment for academic credentials.[1] (Boyd Depo., at 76-77). Plaintiff's offer was subsequently rescinded on March 5, 2007. (Williams Depo., at 21).

## II. DISCUSSION

A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.* Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992).

---

[1] The record reflects Plaintiff was two hours short of completing his Master of Public Administration at the University of Oklahoma. (Williams Depo., at 24).

5

B. <u>Plaintiff's Title VII Claim</u>

The Magistrate Judge found that Plaintiff failed to establish a prima facie case of reverse discrimination and that FPI offered legitimate, non-discriminatory reasons for its actions. The court agrees.

Plaintiff's objections outline both specific and general disagreements with the Magistrate Judge's Report, as well as objections to assertions made by Defendants. Although the court has thoroughly reviewed the entire record, the court will only address Plaintiff's objections that point to specific aspects of the Magistrate Judge's proposed findings and recommendations. *See Orpiano v. Johnson*, 687 F.2d 44, 47-48 (4th Cir. 1982).

Plaintiff objects to the portions of the Magistrate Judge's proposed findings that state "the defendant's racially neutral reasons for its actions are undisputed and there is no evidence they are pretextual." (Pl.'s Objections, at 30). Plaintiff contends that this finding is based on the improper application of the direct method of proving discrimination, and that this finding ignores the indirect evidence of discrimination. *Id.* The court disagrees.

When a plaintiff cannot produce direct evidence of an employer's discriminatory intent, the plaintiff may prove his case with circumstantial evidence under the burden-shifting scheme of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (U.S. 1973); *see Lucas v. Dole*, 835 F.2d 532, 533-34 (4th Cir. 1987)(recognizing the *McDonnell Douglas* framework applies to reverse discrimination claims brought under Title VII). Under *McDonnell Douglas*, the initial burden falls on the plaintiff to demonstrate a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff satisfies this initial burden, then a presumption of discrimination arises, and the burden shifts to the employer to produce a legitimate,

non-discriminatory reason for its adverse employment action. *Beall v. Abbott Lab.*, 130 F.3d 614, 619 (4th Cir. 1997). If the employer satisfies its burden of production, then "the presumption of discrimination that arose from the prima facie case disappears, and the burden of proof is left with the plaintiff to show that the employer acted with a discriminatory intent and that its proffered explanation was a pretext for discrimination." *Paris v. ARC/Davidson County, Inc.*, 307 F. Supp. 2d 743, 754 (M.D.N.C. 2004).

In order to establish a prima facie case for discrimination, Title VII requires a plaintiff to show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing at a level that met his employer's legitimate job expectations; and (4) the position remained open to or was filled by similarly qualified applicants outside the protected class. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).[2] The Fourth Circuit has expressly declined to decide whether a heightened standard should be applied to Title VII reverse discrimination cases. *See Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, at *6, n.13 (4th Cir. June 7, 2000).

---

[2] Some courts, however, have held that in lieu of showing membership in a protected class, members of the white majority who allege reverse discrimination must show "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981); *see Mills Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999); *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997); *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 66-67 (6th Cir. 1985). Alternatively, the Third Circuit has rejected this more rigorous standard in favor of a standard that allows a reverse discrimination plaintiffs to establish the first element of a prima facie case by presenting sufficient evidence to allow a reasonable fact finder to conclude, given the totality of the circumstances, that the defendant treated plaintiff less favorably than others because of his race, color, religion, sex, or national origin. *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999).

It is unnecessary for the court to resolve this issue under the facts of the instant case. Regardless of which standard is applied, Plaintiff has failed to make out a prima facie case. At the time of the adverse employment action, the record reflects that Plaintiff was not performing at a level that met Defendant's legitimate job expectations. Prior to Plaintiff's employment offer being rescinded, he was involved in a disagreement with another employee, Brenda Valentine.[3] (Pl.'s Motion in Opp., Ex. 2). Plaintiff contends this disagreement was not adversarial in nature, and the court accepts Plaintiff's characterization. (Pl.'s Objections, at 6). No matter how this disagreement is characterized, however, the record reflects that Ms. Valentine was uncomfortable with and very upset by Plaintiff's attitude toward her. (Pl.'s Motion in Opp., Ex. C). The record further reflects that Ms. Valentine went to Sheila Boyd to express her concerns about Plaintiff immediately following the disagreement, and that both Ms. Boyd and Mr. Eisenhut were aware of Ms. Valentine's feelings about Plaintiff's actions toward her. (Pl.'s Motion in Opp., Ex. 2).

Additionally, Vanessa Ladson, the Senior Accounts Payable Administrator, submitted an affidavit that Plaintiff came to her office regarding purchasing home security equipment. The record reflects that Plaintiff wanted Ms. Ladson to give him the money to pay for the equipment. Plaintiff's action was not consistent with Defendant's normal company procedure for obtaining funds for purchasing equipment. (Ladson Depo., at 39). This action was also reported to Mr. Eisenhut. (Ladson Depo., at 42). In fact, Plaintiff admitted to placing items purchased with FPI's corporate funds into his own name. (Williams Depo., at 36).

---

[3] The court recognizes that Plaintiff's offer of employment was rescinded prior to his formal start date. However, because Plaintiff was already working for FPI in his capacity as an independent contractor, the court is accessing "legitimate job expectations" based on Plaintiff's behavior while he was working with FPI as an independent contractor prior to the formal start date of his offer of employment.

At the time Plaintiff's employment offer was rescinded, Mr. Eisenhut was aware of the disagreement between Plaintiff and Ms. Valentine, Plaintiff's attempt to obtain funds to purchase equipment that was inconsistent with normal policy, and the concerns the Human Resources Department had about Plaintiff's conflicting academic credentials. (Eisenhut Depo., at 18-23). The court finds that Plaintiff was not performing at a level that met FPI's legitimate job expectations. Plaintiff has, therefore, failed to make out a prima facie case for discrimination.

In addition to Plaintiff's failure to state a prima facie case of discrimination, Defendants have also offered a legitimate non-discriminatory reason for rescinding Plaintiff's job offer. Specifically, the record reflects that Plaintiff submitted three resumes containing conflicting information to FPI. The inconsistencies were picked up during an investigation into Plaintiff's background and raised concerns with the Human Resources Department. (Def. Motion in Opp., Ex. 3). The record reflects that these false representations were relevant to FPI's decision to rescind Plaintiff's offer of employment. (Boyd Dep. at 81). Therefore, the court finds that FPI had a legitimate non-discriminatory reasons for rescinding Plaintiff's job offer.

C.     Plaintiff's State Law Claims

The Magistrate Judge also recommended that if Defendants' motion for summary judgment was granted that this court decline to exercise jurisdiction over Plaintiff's remaining pendant state law claims for breach of contract, libel, and slander. The court agrees.

Granting Defendants' motion for summary judgment disposes of the federal cause of action in this case and only state law claims will remain. For this reason, the court finds that judicial economy, convenience, fairness, and comity suggest that this court should decline jurisdiction of the appended state law claims. *See* 28 U.S.C. § 1367(c)(3).

III.  CONCLUSION

The court adopts the Magistrate Judge's recommendation for the reasons set forth herein. The court hereby grants Defendants' motion for summary judgment (Entry 39). Plaintiff's state law claims for breach of contract, libel, and slander, are hereby dismissed with leave for Plaintiff to refile in state court within 30 days as provided by 28 U.S.C. § 1367(d), unless state law provides a longer period of time. All other pending motions are denied as moot.

**IT IS SO ORDERED.**

s/Margaret B. Seymour
Margaret B. Seymour
United States District Judge

March 30, 2009
Columbia, South Carolina